Jeremy J. Hugus #7-4630
PLATTE RIVER INJURY LAW
123 South Beech Street
Casper, WY 82601
P: 307-215-9724
E: hugus@platteriverlaw.com

*Attorney for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| BRIONNE HOPKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. _____ |
| ) | |
| FREMONT MOTOR COMPANY AND ) | |
| FREMONT MOTOR CASPER, INC. ) | |
| ) | |
| Defendants. ) | |

# COMPLAINT

Plaintiff complains and avers against Defendant as follows:

## I. INTRODUCTION

1. This is an wrongful termination employment dispute based on disability discrimination and sexual harassment and discrimination in violation of both Federal and state law.

## II. PARTIES, JURISDICTION, AND VENUE

2. At all times relevant, Plaintiff Brionne Hopkins was a citizen of the State of Wyoming and a resident of Casper, Wyoming.

3. At all times relevant, Defendants (collectively "FMC") was at all times relevant hereto a Wyoming registered company with its principal place of business in the Town of Lander, County of Fremont, State of Wyoming.

4. The averments contained herein raise questions of federal law; jurisdiction is proper pursuant to 28 U.S.C. § 1331.

5. This Court also has pendant jurisdiction over question of Wyoming state law pursuant to 28 U.S.C. § 1367.

6. The unlawful acts, statutory violations, negligence, and breaches of duty which give rise to this action were committed in Natrona County within the District of Wyoming; venue is proper in this Court pursuant to 28 U.S.C. § 1391.

### III.   PROCEDURAL HISTORY and REQUIREMENTS

7. Plaintiff has satisfied all procedural requirements and exhausted his administrative remedies prior to commencing this action. Both the Wyoming Department of Workforce Services and the EEOC found FMC unlawfully discriminated against plaintiff, but conciliation efforts were unsuccessful. Mr. Hopkins received his "Right-to-Sue" letter from the EEOC and is filing this complaint within 90 days of receiving the same pursuant to 29 C.F.R. § 1601.28.

### IV.   FACTS COMMON TO ALL CAUSES OF ACTION

8. Plaintiff repeats and fully incorporates all previous paragraphs.

9. FMC operates car dealerships throughout Wyoming including Fremont Motor Casper, in Natrona County, Wyoming.

10. All FMC employees relevant to this Complaint acted within the course and scope of their employment for FMC.

11. FMC is directly liable for all acts alleged herein including the acts of its agents, supervisors, representatives, and employees who were acting withing the course and scope of their employment.

12. On or about September 11, 2017, FMC hired Mr. Hopkins as a sales consultant to work at the Fremont Motor Casper location in Natrona County, Wyoming.

13. Mr. Hopkins was an employee of FMC until his termination on October 15, 2017.

14. Mr. Hopkins began his employment at FMC on September 11, 2017 as a sales consultant

15. At all times during his employment with FMC, Mr. Hopkins satisfactorily performed his job duties.

16. During the Summer of 2017, Defendant FMC held a competition. The Fremont Motor Casper sales consultants were to sell at least 150 vehicles in a single month. The competition for three months as three separate, consecutive month-long competitions.

17. The prize at the end of the competition was an expense-paid trip on a private chartered plane to Denver, Colorado, overnight hotel accommodations, a $1,000 cash prize, steak dinner and a trip to Shotgun Willie's strip club.

18. When this prize was presented to Mr. Hopkins, during a sales consultant meeting while he was at work, it was presented as a trip to Denver with the main event being a trip to the strip club Shotgun Willie's and $1,000 to spend on strippers.

19. FMC's sales manager made sexually explicit comments about naked women and their breasts during FMC sales meetings as he tried to motivate the sales consultants to sell more cars in order to win the grand prize trip to Denver and the strip club.

20. Mr. Hopkins participated in the competition in September and performed well. Mr. Hopkins sold more vehicles that several of his coworkers and bought a vehicle himself. The sales team was ultimately successful in reaching its goal and wining the prize trip.

21. FMC's sales manager called Shotgun Willie's in advance and notified its staff that FMC was bringing its sales team with lots of spending money and requested that Shotgun Willie's have their "best girls" working when the FMC folks arrived.

22. During a sales meeting, FMC's sales manager voiced the expectation that the $1000 cash prize was to be spent at the strip club so everyone on the team would get the "benefit" of all the money being spent to pay the strippers.

23. On October 5, 2017, Mr. Hopkins told FMC's sales manager that he did want to go on the Denver trip, but he did not want to go to the strip club.

24. On October 9, 2017, Mr. Hopkins informed FMC's sales manager and general manager of his history of disability as an alcoholic.

25. Mr. Hopkins told his supervisors at FMC that he did not want to go to the strip club because of his alcoholism disability; this was not a healthy environment for him in light of his alcoholism.

26. Mr. Hopkins also told his supervisors at FMC that he did not want to go to the strip club because he was uncomfortable being in the sexually explicit environment of a strip club.

27. After telling the sales manager he did not want to participate in the company-sponsored strip club prize, Mr. Hopkins was told he was taken off the itinerary to go on the trip.

28. When Mr. Hopkins told his supervisors he wanted to go to Denver with the team but did not want to participate in the strip club outing, he was told that was not an option.

29. Mr. Hopkins was the only member of the sales team not permitted to go on the trip to Denver.

30. Despite strong sales performance during the sales competition, Mr. Hopkins was initially denied the $1,000 cash prize.

31. Mr. Hopkins was told by the FMC manager that he would have been paid the $1000 cash prize if he would have just gotten on the plane.

32. During this time, a hostile work environment formed when the rest of the sales team and especially the sales managers. The sales managers began to distance themselves from Mr. Hopkins and treat him unkindly since he did not want to go the strip club because of his alcoholism and the sexual explicitly environment there.

33. Once Mr. Hopkins shared about his alcoholism and his desire not to be in that environment, the sales manager's abruptly stopped trying to negotiate sales on his behalf and giving him the support he needed to make sales and otherwise do his job.

34. On October 15, 2017, Mr. Hopkins received a call from his sales manager who said he was "no longer a good fit" and not to come in for his next scheduled shift.

35. Mr. Hopkins repeatedly had to ask for the $1000 sales bonus. After repeated asks he was paid $500 even though the rest of the sales team was paid $1,000.

36. After his wrongful termination Mr. Hopkins escalated his complaint about the sales bonus to and brought it to the attention of FMC's human resources department. Only after that, was he paid the remainder of his $1000 prize.

37. Prior to his wrongful termination, Mr. Hopkins was actively bullied, intimidated and harassed by the Defendant through their sales managers and general managers.

38. At the time Mr. Hopkins was wrongfully terminated, he was able to and was performing satisfactorily at his job.

39. At the time Mr. Hopkins was wrongfully terminated, he was employed full time with Defendant and entitled to certain benefits available to all FMC's employees.

## V.     FIRST CAUSE OF ACTION
### (Sexual Harassment and Discrimination – 42 U.S.C. §§ 2000e through 2000e-2)

40.     Plaintiff repeats and fully incorporates all previous paragraphs.

41.     Plaintiff is a member of a protected class under 42 U.S.C. §§ 2000e through 2000e-2.

42.     At the time FMC fired Mr. Hopkins he was doing the tasks required of a sales consultant and was performing his job in a satisfactory manner.

43.     When Defendant FMC fired Mr. Hopkins, it was aware of Mr. Hopkins sex and that he was a member of a protected class under 42 U.S.C. §§ 2000e through 2000e-2.

44.     Prior to firing Mr. Hopkins, FMC refused to pay Mr. Hopkins a prize of $1,000 or take him on the expense-paid trip because of his refusal to visit a strip club with the sales team thereby rejecting the typical gender norms FMC expected and required of Mr. Hopkins as a male member of its sale's team.

45.     Despite the fact that Mr. Hopkins was satisfactorily performing his job duties, he was terminated for being a man and not fulfilling Defendant's expectations of what a man should do, including attendance and active participation at a work-sponsored strip club trip with his co-workers.

46.     In refusing to retain Plaintiff's employment, FMC unlawfully discriminated against Mr. Hopkins in violation of 42 U.S.C. §§ 2000e through 2000e-2, inclusive, and acted with disregard for his civil rights and protections thereunder.

47.     FMC bullied, intimidated, harassed, and discriminated against Mr. Hopkins in part, because he is a man.

48.     FMC bullied, intimidated, harassed, and discriminated against Mr. Hopkins by trying to coerce Mr. Hopkins in attending a trip to a strip club because he is a man and expected him to behave a certain way as a man, despite knowing that he did not want to be in an explicitly sexual environment.

49. FMC bullied, intimidated, harassed, and discriminated against Mr. Hopkins by denying him an expense paid trip to Denver with the rest of his team despite having satisfactory performance because he did not want to go to the strip club and FMC's employee's thought men should want to do just that.

50. FMC bullied, intimidated, harassed, and discriminated against Mr. Hopkins by denying him the $1000 cash prize because he did not want to be in the sexual explicit strip club environment with the rest of the sales team.

51. FMC bullied, intimidated, harassed, and discriminated against Mr. Hopkins by allowing its managers and employees to distance themselves and become unkind towards Mr. Hopkins because he did not attend the trip to the strip club.

52. FMC bullied, intimidated, harassed, and discriminated against Mr. Hopkins by refusing to make accommodations for him to attend the Denver trip without having to go to the strip club.

53. FMC bullied, intimidated, harassed, and discriminated against Mr. Hopkins by refusing to help him negotiate sales because he did not attend the work-sponsored prize trip to the strip club.

54. FMC bullied, intimidated, harassed, and discriminated against Mr. Hopkins by terminating him from his position because he did not attend the work-sponsored prize trip to the strip club.

55. As a direct and proximate result of FMC's unlawful harassment, wrongful termination, and other discriminatory acts, errors, and omissions, Plaintiff has sustained past and future damages, to be proven at trial, which he is entitled to recover.

56. FMC committed its unlawful discriminatory acts, errors, and omissions as enumerated hereinabove in a manner it knew or reasonably should have known created a high probability of serious damage and harm to Plaintiff.

57. Because FMC's actions, errors, and omissions were willful and wanton or reckless in nature and with disregard for Plaintiff's emotional and financial well-being, Plaintiff is entitled to punitive damages.

## VI.   SECOND CAUSE OF ACTION
### (Sexual Harassment and Discrimination – Wyo. Stat. §§ 27-9-101 through 105)

58. Plaintiff repeats and fully incorporates all previous paragraphs.

59. At all times relevant hereto FMC was Mr. Hopkin's employer under Wyo. Stat. §§ 27-9-105.

60. At the time FMC fired Mr. Hopkins he was doing the tasks required of a sales consultant and was performing his job in a satisfactory manner.

61. When Defendant FMC fired Mr. Hopkins, it was aware of Mr. Hopkins sex and that he was a member of a protected class under Wyo. Stat. §§ 27-9-105 et seq.

62. Prior to firing Mr. Hopkins, FMC refused to pay Mr. Hopkins a prize of $1,000 or take him on the expense-paid trip because of his refusal to visit a strip club with the sales team thereby rejecting the typical gender norms FMC expected and required of Mr. Hopkins as a male member of its sale's team.

63. Despite the fact that Mr. Hopkins was satisfactorily performing his job duties, he was terminated for being a man and not fulfilling Defendant's expectations of what a man should do, including attendance and active participation at a work-sponsored strip club trip with his co-workers.

64. In refusing to retain Plaintiff's employment, FMC unlawfully discriminated against Mr. Hopkins in violation of Wyo. Stat. §§ 27-9-105 et seq. and acted with disregard for his civil rights and protections thereunder.

65. FMC bullied, intimidated, harassed, and discriminated against Mr. Hopkins in part, because he is a man.

66. FMC bullied, intimidated, harassed, and discriminated against Mr. Hopkins by trying to coerce Mr. Hopkins in attending a trip to a strip club because he is a man and expected him to behave a certain way as a man, despite knowing that he did not want to be in an explicitly sexual environment.

67. FMC bullied, intimidated, harassed, and discriminated against Mr. Hopkins by denying him an expense paid trip to Denver with the rest of his team despite having satisfactory performance because he did not want to go to the strip club and FMC's employee's thought men should want to do just that.

68. FMC bullied, intimidated, harassed, and discriminated against Mr. Hopkins by denying him the $1000 cash prize because he did not want to be in the sexual explicit strip club environment with the rest of the sales team.

69. FMC bullied, intimidated, harassed, and discriminated against Mr. Hopkins by allowing its managers and employees to distance themselves and become unkind towards Mr. Hopkins because he did not attend the trip to the strip club.

70. FMC bullied, intimidated, harassed, and discriminated against Mr. Hopkins by refusing to make accommodations for him to attend the Denver trip without having to go to the strip club.

71. FMC bullied, intimidated, harassed, and discriminated against Mr. Hopkins by refusing to help him negotiate sales because he did not attend the work-sponsored prize trip to the strip club.

72. FMC bullied, intimidated, harassed, and discriminated against Mr. Hopkins by terminating him from his position because he did not attend the work-sponsored prize trip to the strip club.

73. As a direct and proximate result of FMC's unlawful harassment, wrongful termination, and other discriminatory acts, errors, and omissions, Plaintiff has sustained past and future damages, to be proven at trial, which he is entitled to recover.

74. FMC committed its unlawful discriminatory acts, errors, and omissions as enumerated hereinabove in a manner it knew or reasonably should have known created a high probability of serious damage and harm to Plaintiff.

75. Because FMC's actions, errors, and omissions were willful and wanton or reckless in nature and with disregard for Plaintiff's emotional and financial well-being, Plaintiff is entitled to punitive damages.

### VII.   THIRD CAUSE OF ACTION
### (Disability Discrimination 42 U.S.C. §§ 12101 through 12117)

76. Plaintiff repeats and fully incorporates all previous paragraphs.

77. Mr. Hopkins is a male who suffers from alcoholism.

78. Mr. Hopkins is a member of a protected class under 29 U.S.C. §§ 12101 through 12117.

79. Mr. Hopkins was performing his job in a satisfactory manner when FMC fired him on or about October 15, 2017.

80. When FMC fired Mr. Hopkins, it was aware of his alcoholism disability and that he was a protected class under 29 U.S.C. §§12101 through 12117.

81. Prior to firing the Mr. Hopkins, FMC was aware of an effective, reasonable, alternative that would accommodate his alcoholism disability—allowing him to go to Denver but not requiring him to go to the strip club with the rest of his sales team.

82. Prior to firing the Mr. Hopkins, FMC was aware of an effective, reasonable, alternative that would that would not impose on it an unreasonable hardship.

83. FMC refused to make a reasonable accommodation for Mr. Hopkins by refusing to allow him to go on a company trip at all. Instead, FMC excluded him from the trip and refused to pay the $1000 cash prize that was associated with the trip.

84. FMC bullied, intimidated, harassed, and discriminated against Mr. Hopkins by trying to coerce Mr. Hopkins in attending a trip to a strip club despite knowing about his disability as a

recovering alcoholic and that being at a strip club would create a dangerous environment for Mr. Hopkin's safety and well-being.

85. FMC bullied, intimidated, harassed, and discriminated against Mr. Hopkins by denying him an expense paid trip to Denver with the rest of his team despite having satisfactory performance because of his inability to go to a strip club as a result of his disability.

86. FMC bullied, intimidated, harassed, and discriminated against Mr. Hopkins by denying him the $1000 cash prize because of his inability to go to a strip club as a result of his disability.

87. FMC bullied, intimidated, harassed, and discriminated against Mr. Hopkins by allowing its managers and employees to distance themselves and become unkind towards Mr. Hopkins because of his inability to go to a strip club as a result of his disability.

88. FMC bullied, intimidated, harassed, and discriminated against Mr. Hopkins by refusing to help him negotiate sales because of his inability to go to a strip club as a result of his disability.

89. FMC bullied, intimidated, harassed, and discriminated against Mr. Hopkins, thereby creating a hostile work environment because he is disabled due to his alcoholism and was unable to attend a trip to a strip club.

90. FMC bullied, intimidated, harassed, and discriminated against Mr. Hopkins by terminating him from his position because of his inability to go to a strip club as a result of his disability.

91. As a direct and proximate result of Defendant FMC's unlawful discriminatory acts, errors, and omissions, Plaintiff has sustained past and future injuries and damages, to be proven at trial, which he is entitled to recover.

92. Defendant committed its unlawful discriminatory acts, errors, omissions as enumerated hereinabove in a matter it knew or reasonably should have known created a high probability of serious damages and harm to Plaintiff.

93.     Because Defendant's actions, errors, and omissions were willful and wanton or reckless in nature and with disregard for Plaintiff's emotional and financial well-being, Plaintiff is entitled to punitive damages.

## VIII.   FOURTH CAUSE OF ACTION
### (Disability Discrimination Wyo. Stat. §§ 27-9-105)

94.     Plaintiff repeats and fully incorporates all previous paragraphs.

95.     Plaintiff is a male who suffers from alcoholism.

96.     Plaintiff is a member of a protected class under Wyo. Stat. § 27-9-105 et seq..

97.     Mr. Hopkins was performing his job in a satisfactory manner when FMC fired him on or about October 15, 2017.

98.     When FMC fired Mr. Hopkins, it was aware of his alcoholism disability and that he was a protected class under Wyo. Stat. §§ 27-9-105 et seq.

99.     Prior to firing the Mr. Hopkins, FMC was aware of an effective, reasonable, alternative that would accommodate his alcoholism disability—allowing him to go to Denver but not requiring him to go to the strip club with the rest of his sales team.

100.    Prior to firing the Mr. Hopkins, FMC was aware of an effective, reasonable, alternative that would that would not impose on it an unreasonable hardship.

101.    FMC refused to make a reasonable accommodation for Mr. Hopkins by refusing to allow him to go on a company trip at all. Instead, FMC excluded him from the trip and refused to pay the $1000 cash prize that was associated with the trip.

102.    FMC bullied, intimidated, harassed, and discriminated against Mr. Hopkins by trying to coerce Mr. Hopkins in attending a trip to a strip club despite knowing about his disability as a recovering alcoholic and that being at a strip club would create a dangerous environment for Mr. Hopkin's safety and well-being.

103. FMC bullied, intimidated, harassed, and discriminated against Mr. Hopkins by denying him an expense paid trip to Denver with the rest of his team despite having satisfactory performance because of his inability to go to a strip club as a result of his disability.

104. FMC bullied, intimidated, harassed, and discriminated against Mr. Hopkins by denying him the $1000 cash prize because of his inability to go to a strip club as a result of his disability.

105. FMC bullied, intimidated, harassed, and discriminated against Mr. Hopkins by allowing its managers and employees to distance themselves and become unkind towards Mr. Hopkins because of his inability to go to a strip club as a result of his disability.

106. FMC bullied, intimidated, harassed, and discriminated against Mr. Hopkins by refusing to help him negotiate sales because of his inability to go to a strip club as a result of his disability.

107. FMC bullied, intimidated, harassed, and discriminated against Mr. Hopkins, thereby creating a hostile work environment because he is disabled due to his alcoholism and was unable to attend a trip to a strip club.

108. FMC bullied, intimidated, harassed, and discriminated against Mr. Hopkins by terminating him from his position because of his inability to go to a strip club as a result of his disability.

109. As a direct and proximate result of Defendant FMC's unlawful discriminatory acts, errors, and omissions, Plaintiff has sustained past and future injuries and damages, to be proven at trial, which he is entitled to recover.

110. Defendant committed its unlawful discriminatory acts, errors, omissions as enumerated hereinabove in a matter it knew or reasonably should have known created a high probability of serious damages and harm to Plaintiff.

111. Because Defendant's actions, errors, and omissions were willful and wanton or reckless in nature and with disregard for Plaintiff's emotional and financial well-being, Plaintiff is entitled to punitive damages.

## IX.   FIFTH CAUSE OF ACTION
**(Intentional Infliction of Emotional Distress)**

112. Plaintiff repeats and fully incorporates all previous paragraphs.

113. FMC's refusal to pay Mr. Hopkins the $1000 he was owed or take him to Denver on the private jet unless he went on the company-sponsored prize to a strip club, despite his protestations and voiced-concern over his alcoholism, goes beyond all possible bounds of decency and constitutes intentional or recklessly extreme and outrageous behavior.

114. As a direct and proximate result of these actions, FMC caused Mr. Hopkins severe emotional distress, anguish, humiliation, shame, embarrassment, and worry.

115. Defendant committed these unlawful discriminatory acts, errors, omissions as enumerated hereinabove in a matter it knew or reasonably should have known created a high probability of serious damages and harm to Plaintiff.

116. Because FMC's actions, errors, and omissions were extreme and outrageous in nature and with disregard for Plaintiff's emotional and financial well-being, Plaintiff is entitled to punitive damages.

## X.   SIXTH CAUSE OF ACTION
**(Breach of Implied Duty of Good Faith and Fair Dealing )**

117. Plaintiff repeats and fully incorporates by this reference all above paragraphs.

118. FMC's own employee manual or handbook has rules regarding sexual harassment and sexual discrimination.

119.    These provisions created a reasonable expectation in Mr. Hopkin's mind as to the environment, protections and rules he could rely on as an employee regarding sexual harassment and discrimination.

120.    FMC failed to follow their own written policies regarding discrimination, harassment, and hostile work environments.

121.    Mr. Hopkins also had a reasonable expectation that FMC would not discriminate against him on the basis of sex or disability.

122.    These expectations created a special relationship and an implied duty of good faith and fair dealing.

123.    In violating its own policies and in failing to make a reasonable accommodation for Plaintiff in light of their knowledge of Mr. Hopkin's disability and sex, FMC breached an implied duty of good faith and fair dealing to Plaintiff arising from the special relationship and his reasonable expectation that FMC would not unlawfully violate their statutory duties and obligations to him.

124.    As a direct and proximate result of FMC's breach of the implied duty of good faith and fair dealing, Mr. Hoopkins has sustained injuries and damages, to be proven at trial, which he is entitled to recover.

## XI.    PRAYER FOR RELIEF

WHEREFORE Plaintiff Brionne Hopkins respectfully requests this Court enter judgement against Defendant Fremont Motor Company and award him the following relief:

A.    Pecuniary and compensatory damages, including back pay, lost employee benefits, and prejudgment interest, compounded annually;

B.    Front pay for future lost wages and benefits;

C.    Reimbursement for increased tax liability on any lump damages payment;

D. Damages for lost earning capacity; loss of reputation; loss of enjoyment and quality of life; emotional pain, mental anguish, distress, and suffering;

E. Punitive damages for Defendant's extreme, reckless, outrageous, and wrongful conduct;

F. Litigation costs and expenses and attorney's fees as provided by federal statute;

G. An award of such other equitable remedies or relief as the Court finds just and proper.

## X.     JURY DEMAND

125. Plaintiff hereby demands a jury trial in this matter.

RESPECTFULLY SUBMITTED this 19th day of July, 2021.

Jeremy J. Hugus, #7-4630
PLATTE RIVER INJURY LAW
123 South Beech Street
Casper, Wyoming 82601
P: 307-215-9724
E: hugus@platteriverlaw.com

*Attorney for Plaintiff*